IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


| | |
|---|---|
| **PENNY GISH,** <br><br> Plaintiff, <br><br> v. <br><br> **CAROLYN W. COLVIN,** <br> Commissioner of Social Security, <br><br> Defendant. | Case No. 6:14-cv-01938-SI <br><br> **OPINION AND ORDER** |

Brenda S. Mosely, Attorney at Law, P.O. Box 1614, Bandon, OR 97411. Attorney for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Herbert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; Lisa Goldoftas, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-2240. Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Penny R. Gish seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Social Security Income ("SSI"). Because the Commissioner's decision is supported by substantial evidence and free of legal error, the decision is AFFIRMED and this case DISMISSED.

OPINION & ORDER – 1

**STANDARD OF REVIEW**

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th. Cir. 1989). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (quotation marks omitted)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and the Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). However, a reviewing court may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1225-26 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).

**BACKGROUND**

**A. Plaintiff's Application**

Ms. Gish filed an application for disability benefits on January 26, 2009 and for SSI benefits on February 10, 2009, alleging disability as of April 1, 2005. AR 325-31. Born in April

1965, Ms. Gish was 43 years old on the alleged disability onset date and 48 years old at the time of the latest hearing. AR 31, 325. She speaks English and reports completing the eleventh grade. AR 345, 350. She alleges disability due to degenerative disc disease of the lumbar and cervical spine, compression fracture of T11, arthritis in the neck and spine, severe back and neck pain, depression, and anxiety. AR 346, 360, 370. The Commissioner denied her application initially and upon reconsideration, and she requested a hearing before an Administrative Law Judge ("ALJ"). AR 13. After an administrative hearing, an ALJ issued an adverse decision on October 13, 2010. AR 13, 95-124, 138-51. The Appeals Council granted her subsequent request for review. AR 13, 152-56. A second hearing was convened on December 18, 2012, and the ALJ determined that Ms. Gish should undergo a consultative examination. AR 67-94.

Following that examination, a final administrative hearing was convened on September 23, 2013. AR 31-66. In addition to Ms. Gish and a vocational expert ("VE"), testimony was taken from two medical experts. *See id.* The ALJ subsequently issued an adverse decision on December 9, 2013. AR 13-22. The Appeals Council denied Ms. Gish's timely request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3. Ms. Gish now seeks review in this Court.

**B. The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 432(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§ 404.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in

OPINION & ORDER – 4

significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

The ALJ performed the sequential analysis. AR 16-22. At step one, the ALJ found Ms. Gish had not engaged in substantial gainful activity since January 1, 2010, the alleged onset date. AR 16. At step two, the ALJ concluded Ms. Gish had the following severe impairments: degenerative disc disease of the cervical spine, degenerative disc disease of the lumbar spine, remote compression fracture of T11, coronary artery disease, depressive disorder, and borderline intellectual functioning. AR 16-17. At step three, the ALJ determined that Ms. Gish did not have an impairment or combination of impairments that met or equaled a listed impairment. AR 17.

The ALJ next assessed Ms. Gish's RFC and found that she could perform sedentary work except that she was limited to simple, repetitive work. *Id.* At step four, the ALJ found that Ms. Gish was unable to perform her past relevant work. AR 21. At step five, based on the testimony of a VE, the ALJ concluded Ms. Gish could perform jobs that exist in significant numbers in the national economy, including table worker and optical lens inserter. AR 21-22. Accordingly, the ALJ found Ms. Gish not disabled. AR 22.

## DISCUSSION

Ms. Gish argues the ALJ erred by: (A) rejecting the medical opinion of her treating physician; (B) erroneously discrediting her subjective complaints of pain and limitation; and (C) failing to find her disabled under the Act at step five of the sequential analysis.

### A. Medical Opinion Evidence

Ms. Gish argues the ALJ improperly rejected the medical opinion of her treating physician, Shana Jordan, M.D.[1] The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008). The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians.

---

[1] In the beginning of Ms. Gish's brief, in an section entitled "Issues for Review," Ms. Gish indicates the ALJ erred by inadequately weighing the opinions of her treating physicians. In the discussion section of her brief, however, Ms. Gish only assigns error to the evaluation of the opinion of Dr. Jordan. The Commissioner contends that insofar as Ms. Gish asserts any other treating physician's opinion was erroneously evaluated by the ALJ, any such argument is waived. Def.'s Br. 7. The Court agrees. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003) ("Our Circuit has repeatedly admonished that we cannot 'manufacture arguments for an appellant and therefore we will not consider any claims that were not actually argued in appellant's opening brief.") (citation omitted); *see also Carmickle*, 533 F.3d at 1161 n.2. The Court further notes that Ms. Gish did proffer a rebuttal to the Commissioner's argument, as she declined to file a Reply Brief. Similarly, because Ms. Gish did not provide any specific arguments pertaining to the ALJ's assessment of her alleged mental impairments, any such arguments are also waived.

The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).

If a treating doctor's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating doctor's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Additionally, the ALJ must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Lester*, 81 F.3d at 830. As is the case with a treating physician's opinion, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester*, 81 F.3d at 830. Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's testimony, or inconsistency with a claimant's activities of daily living. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). It is error to ignore an examining physician's medical opinion without providing reasons for doing so; an ALJ effectively rejects an opinion when he ignores it. *Smolen v. Chater*, 80 F.3d 1273, 1286 (9th Cir. 1996).

In a letter dated June 1, 2012, treating physician Dr. Jordan described Ms. Gish's conditions as, "severe extensive degenerative joint disease of the cervical and thoracolumbar spine, as well as an old T11 compression fracture . . . [that] severely limit Ms. Gish's mobility. She is also afflicted with chronic, difficult-to-control pain." AR 714. Dr. Jordan concluded that,

"[i]n my opinion, Ms. Gish is totally disabled by her impairments." *Id.* In a separate document dated June 15, 2012, Dr. Jordan reported Ms. Gish had limited flexion of the spine, limited neck mobility, abnormal gait, could not sit, stand, or walk for more than two of eight hours per workday, and would miss more than four days per month. AR 728-732. Dr. Jordan's opinion was contradicted by examining consultative physicians Warren Yu, M.D., Homayoun Saeid, M.D., and Harvey Alpern, M.D., all of whom determined plaintiff was not completely disabled.[2] AR 17, 18, 19-21, 33-39, 449-52, 1551-63. Accordingly, because Dr. Jordan's opinion was contradicted, the ALJ was required to provide specific and legitimate reasons for rejecting her medical opinion. *Lester*, 81 F.3d at 830.

The ALJ found that Dr. Jordan's assessment of permanent disability was inconsistent with the medical record. AR 18 n.3. Specifically, the ALJ explained that plaintiff's "physical examinations . . . showed normal findings regarding range of movement in both the cervical and lumbar spine, with no motor or sensory deficits, and normal gait," which were inconsistent with Dr. Jordan's assessed severely limited mobility. AR 18, 714. Review of the medical records cited by the ALJ supports his position. *See* AR 846 (stable gait, moves all extremities well, December 2011); AR 888 (free movement of neck without stiffness or pain; full range of motion ("ROM") in all four extremities; able to stand, walk, squat, and ambulate without difficulty, January 2012); AR 970 (normal gait, July 2012); AR 999 (no midline cervical, thoracic, or lumbar tenderness; 5/5 strength in all extremities, Ms. Gish declined x-rays stating she only wanted pain medication, again, July 2012); AR 1025-26 (full ROM of neck, no motor weakness

---

[2] The Court notes that another treating physician, Dr. Fish, also opined plaintiff was disabled. AR 366. The ALJ reviewed Dr. Fish's chart note, but accorded the doctor's opinion little weight, finding it was internally inconsistent and based on Ms. Gish's self-reports. AR 19-20. As noted *supra*, because Ms. Gish did not provide any objection to the ALJ's finding, any such argument is waived. *See Indep. Towers of Wash.*, 350 F.3d at 929. Nonetheless, the ALJ provided legally sufficient reasons to discredit the opinion of Dr. Fish.

OPINION & ORDER – 8

in extremities, June 2012); AR 1555 (functional capability assessed at light level based on examination, January 2013); AR 1605 (normal extremities and gait, February 2013); AR 1617 (normal neck ROM, March 2013).

Two separate chart notes from May 2013 discuss Ms. Gish's physical exam and reflect some limitation in her neck's ROM. On May 1, 2013, although Mildred Rowley, M.D. reported "[n]ormal range of motion" for the musculoskeletal system, she also noted limited flexion in the neck, and limited flexion in the lower back. AR 1614. Two days later, Ms. Gish presented at Bay Area Hospital, where treating physician James Woods, M.D., Ph.D. reported decreased neck ROM. AR 1635. Dr. Woods, however, also found no evidence of acute fracture, cord compression, or anything "acute." *Id.* Dr. Woods further reported 5/5 arm strength, no sensory deficit, and noted it was "[d]ifficult to sort out whether this is true nerve compression or just precipitated muscle spasm in the trapezius." *Id.* Notably, the doctor found no lumbar abnormality and Ms. Gish did not describe lumbar pain at the time. *Id.*

Despite these isolated chart notes, the record as a whole contains substantial evidence supporting the ALJ's weighing of Dr. Jordan's opinion. First, neither of the doctors who reported decreased neck ROM in 2013 opined Ms. Gish was therefore disabled, unable to perform work or activities of daily living, or that anything beyond conservative treatment was indicated. *See* AR 1612-15, 1634-35. Next, the ALJ notes the MRI scans of Ms. Gish's cervical spine in 2012 revealed "mild" findings, "with no evidence of nerve root impingement." AR 18. Indeed, the results were interpreted as showing "degenerative changes of the cervical spine . . . with only mild and moderate foraminal stenosis and no neural element impingement." AR 724. Additionally, medical expert Dr. Alpern testified that Ms. Gish has "mild degenerative disc disease," and her pain is "predominantly myofascial." AR 34. Dr. Alpern also indicated Ms. Gish

was not totally disabled, assessing a sedentary RFC. AR 20, 34. Although Ms. Gish argues the medical imaging reveals a more serious pathological picture, the ALJ's findings are nonetheless specific and legitimate and supported by substantial evidence. Further, to the extent there is a conflict of medical evidence or opinion, "[t]he ALJ is responsible for resolving conflicts in the medical record." *Carmickle*, 533 F.3d at 1164. For these reasons, the ALJ's rejection of Dr. Jordan's opinion was not legally erroneous.

**B. Plaintiff's Credibility**

There is a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vazquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ "must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1029, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom he has alleged; he need only show that it could reasonably have caused some degree of the symptom." *Smolen*, 80 F.3d at 1282.

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 503 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

OPINION & ORDER – 10

discredit the claimant's testimony." *Ortez v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history, daily activities, work record, and observations of physicians and third parties regarding claimant's alleged functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities, the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* Social Security Ruling ("SSR") 96-7p, *available at* 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom "is not substantiated affirmatively by the objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has stated that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting claimant's testimony are upheld. *Batson*, 359 F.3d at 1197.

Here, the ALJ indicated:

> The claimant repeatedly complaints [sic] of chronic pain, primarily
> in the neck and back, although sometimes all over her body. Given

OPINION & ORDER – 11

> the mild to moderate nature of the claimant's pathology . . . it is difficult to determine the exact etiology of the pain the claimant alleges in areas other than the neck and back. Although I give some weight to the claimant's allegations of pain, she was not fully credible. For example, contrary to the claimant's allegations of unremitting pain, the claimant admitted to treating sources that the pain is "waxing and waning," i.e. intermittent in nature . . . . Moreover, the record shows the claimant's treatment has been conservative, consisting of pain medication, and that the claimant has not been fully compliant with treatment[.]

AR 20.

Ms. Gish argues that the ALJ failed to provide sufficiently specific evidentiary support for his credibility determination. In support, Ms. Gish contends her treating physicians indicated her pain could be explained by her impairments, and that it is not inconsistent for her to report pain that is unremitting and also waxes and wanes. The ALJ accorded some weight to Ms. Gish's allegations of severe pain in the neck and back, but determined that the objective medical evidence suggested only mild to moderate pathology. AR 20. Ms. Gish argues that while an ALJ may impugn a claimant's credibility when objective medical evidence does not support the allegations of pain, it cannot be the only reason for doing so. *Burch*, 400 F.3d at 680. Here, however, the ALJ did not solely rely on the lack of objective evidence to impugn Ms. Gish's credibility — he also noted the waxing and waning of her pain symptoms, conservative treatment, and her failure to be fully compliant with treatment. All of these rationales are valid in the Ninth Circuit. *See Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012). Accordingly, the ALJ did not err by declining to accord full weight to Ms. Gish's pain allegations aside from her neck and back pain.

Ms. Gish further argues her allegation of unremitting pain is not inconsistent with evidence of waxing and waning pain because she also reported having days where pain keeps her incapacitated in bed, and that she does not have an "average day" because she is "controlled by

pain, anger, and depression." AR 361. The ALJ, in support of his finding, cited a chart note from January 2012 wherein Ms. Gish reported "chronic waxing and waning neck and thoracic back pain[.]" AR 20. In the same chart note, Ms. Gish indicated she had not taken her Soma pain medication prior to the visit, and further that she "normally goes to a clinic and gets a Toradol shot for her symptoms, which usually helps." AR 887. Ms. Gish's reports of waxing and waning pain, and efficacy of injections directly contradicts her allegations of constant pain and inability to perform "any physical activities." AR 370. Her reports also contradict her assertion at the hearing that "[n]othing I take helps the pain." AR 53.

As set forth above, an ALJ may employ ordinary techniques of credibility evaluation, including prior inconsistent testimony regarding symptoms. *Smolen*, 80 F.3d at 1284. Here, the ALJ appropriately identified the testimony he found not credible, and the evidence that he believed undermined the testimony. AR 20. The ALJ's interpretation is reasonable and supported by substantial evidence in the record. As such, the ALJ's rationale was not erroneous. To the extent alternative interpretations of the evidence are possible, they do not invalidate the ALJ's rationale as. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (noting that the ALJ's interpretation may not be the only reasonable interpretation, but where the ALJ's interpretation is reasonable and supported by substantial evidence, it is not a court's role to second-guess it).

The ALJ also discounted Ms. Gish's credibility based on her conservative treatment, which predominantly consisted of pain medication, as well as her failure to attend all of her medical appointments. AR 20. Ms. Gish contends her conservative treatment course was compelled by her lack of health insurance. It is inappropriate for an ALJ to make an adverse credibility finding when a claimant has a good reason for not seeking aggressive treatment, such as the inability to pay for such treatment. *See Orn*, 495 F.3d at 638; *Gamble v. Chater*, 68 F.3d

OPINION & ORDER – 13

319, 321 (9th Cir. 1995). On the other hand, "if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated . . . ." *Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012) (quoting *Orn*, 495 F.3d at 638). Ms. Gish argues in briefing before the Court that the ALJ's conservative treatment finding is erroneous because she would have proceeded with surgery in 2006, but did not have the financial ability to do so. At the hearing, however, when the ALJ asked Dr. Alpern whether surgery was indicated based on the medical record, he answered in the negative. AR 38. As such, medical opinion regarding Ms. Gish's surgical candidacy was divided, and the ALJ properly exercised his discretion in finding that more substantial treatment modalities were not indicated. *See Carmickle*, 533 F.3d at 1164 (ALJ is responsible for resolving conflicts in the medical record) (citation omitted). Accordingly, Ms. Gish's contention that her treatment has been conservative because more effective treatment has been precluded by financial barriers is unavailing on this record. Again, Ms. Gish's alternative interpretation of the evidence is insufficient to displace the ALJ's finding.

Finally, the ALJ found Ms. Gish's allegations lacked credibility because she "was not fully compliant with treatment, often missing appointments or failing to follow through with her doctor's recommendations." AR 20. While reviewing the record, the Court identified at least two instances where Ms. Gish presented at a hospital emergency room with pain complaints, but nonetheless reported she had not taken pain medication available to her prior to arriving. AR 514, 887. However, the ALJ failed to identify these instances with specifically and explain their import regarding Ms. Gish's credibility. Nor did the ALJ identify any other occasion where Ms. Gish failed properly to take her pain medication. *See* AR 20. Similarly, the ALJ fails to identify any instances of Ms. Gish missing appointments, stating only that it happens "often." *Id*.

Such reasoning is legally insufficient. In order to discredit claimant testimony, the ALJ must specifically identify questionable testimony and explain precisely what evidence undermines it. *Reddick v. Chater*, 157 F.3d, 715, 722 (9th Cir. 1998). Here, the ALJ's general findings regarding missed appointments and failure to abide prescribed treatment do not meet the required legal threshold, and as such, cannot be upheld. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted).

In sum, the ALJ provided three valid reasons and one invalid reason for discounting Ms. Gish's credibility. In the Ninth Circuit, the ALJ's overall credibility decision may be upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *Batson*, 359 F.3d at 1197. Such is the case here. Despite the ALJ's single insufficient credibility rationale, the overall finding is nonetheless supported by substantial evidence in the record and otherwise free of legal error. *Id.* Accordingly, the ALJ's finding concerning Ms. Gish's credibility is upheld.

**C. Step Five Findings**

Ms. Gish contends that the ALJ failed to include all of her limitations when posing hypothetical questions to the VE regarding jobs in the national economy, rendering his testimony irrelevant. Ms. Gish's assignment of error, however, is prefaced solely upon the ALJ's failure to include the limitations set forth by Dr. Jordan. As explained above, the ALJ did not err in according Dr. Jordan's medical opinion diminished weight. Indeed, the ALJ is not required to incorporate evidence from medical opinion evidence that was permissibly discounted. *Batson*, 359 F.3d at 1197. Ms. Gish provides little more than a restatement of her previous argument, and as such, her step five argument lacks merit. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175-76 (9th Cir. 2008). The ALJ's hypothetical questions to the VE were legally sufficient, and the ALJ properly identified sedentary jobs in the national economy that

Ms. Gish's RFC would allow her to perform. AR 21-22. Accordingly, the ALJ's decision not to award benefits is upheld.

## CONCLUSION

The Commissioner's decision that Ms. Gish is not disabled is based on proper legal standards and supported by substantial evidence. Thus, Ms. Gish's request for remand (Dkt. 1) is DENIED. The Commissioner's decision is AFFIRMED, and this case DISMISSED.

DATED this 29th day of February, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge